UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case Number: 20-22761-CIV-MORENO**

ROMMEL BALDOZA,

                Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

                Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND ORDER DENYING MOTION TO STRIKE DEMAND FOR PUNITIVE DAMAGES

THIS CAUSE came before the Court upon the Defendant Royal Caribbean Cruises Ltd.'s Motion to Dismiss the Amended Complaint for Failure to State a Cause of Action and to Strike Demand for Punitive Damages (**D.E. 13**).

Based on the parties' arguments and, given the stage of the proceedings, Royal Caribbean's motion to dismiss Counts II, III, and VI is denied, as these counts are adequately plead at this juncture. Royal Caribbean's motion to strike the demand for punitive damages is also denied at this time. Royal Caribbean may re-raise its arguments, if appropriate, at summary judgment.

As to Count V, Royal Caribbean's motion to dismiss is granted. Count V is dismissed without prejudice as a shotgun pleading and for failure to state a claim regarding the three causes of action alleged therein.

## I.       BACKGROUND

The following facts are taken from the Plaintiff Rommel Baldoza's First Amended Complaint and Jury Trial Demand. This case arises from injuries sustained by Baldoza while he

was a passenger onboard Royal Caribbean's *Symphony of the Seas.* Specifically, Baldoza participated in an onboard attraction called the FlowRider Surfing Simulator. The FlowRider attraction shoots a thin sheet of water up a sloped surface at a high velocity to simulate the surface of a wave. Participants then attempt to ride this sheet of water on a board either laying down or standing up.

As alleged, the FlowRider onboard the *Symphony of the Seas* was different from the standard FlowRider. Baldoza alleges that the FlowRider that caused his injuries was modified by Royal Caribbean when it "shorten[ed] its overall length in order to fit the attraction on the deck of the [] cruise ship." The shorter length caused participants to be thrown into the back wall at a high velocity, and/or causing a more severe fall, relative to the falls on standard FlowRiders. In addition to the shorter length, the subject FlowRider is also missing a "Pillow Padding" system, which helps support falls and decrease injuries.

At the time he was going to use the FlowRider attraction, Baldoza alleges that Royal Caribbean personnel instructed and encouraged him to ride the FlowRider in a non-traditional and dangerous manner, namely, by beginning the attraction towards its front end—the lowest point of the attraction and the exact location of the jets which propel water up the ride's sloped surface. As a result, the thin sheet of water is traveling at its fastest at the front end of the attraction. Moreover, Royal Caribbean personnel allegedly did not provide Baldoza with an ample opportunity to practice on the FlowRider before ushering him to the more advanced technique of riding the smaller board in a stand-up fashion.

While using the FlowRider, Baldoza was violently knocked off his feet by the excessive force of the water coming from the jets in front of him. Baldoza was then jettisoned rearward upon

his fall, being "thrown up the face of the 'wave,' over its crest, and into the back wall of the modified FlowRider." Baldoza suffered permanent injuries, including permanent paralysis.

Subsequently, Baldoza filed a six-count, First Amended Complaint against Royal Caribbean, alleging the following causes of action: negligence (Count I), negligent failure to warn (Count II), negligent failure to maintain (Count III), negligent instruction (Count IV), negligent hiring, training, supervision, and/or retention (Count V), and negligent design, modification, installation, and utilization of the FlowRider (Count VI). Royal Caribbean now moves to dismiss Counts II, III, V, and VI, as well as to strike the First Amended Complaint's request for punitive damages.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

### III.     DISCUSSION

Royal Caribbean moves to dismiss Baldoza's First Amended Complaint as follows: (1) Count II (Failure to Warn) should be dismissed as it sets forth duties not required under the law and expands the standard of care; (2) Count III (Failure to Maintain) should be dismissed as Baldoza had failed to adequately plead any facts as to how Royal Caribbean failed to maintain the FlowRider; (3) Count V (Negligent Hiring, Training, Supervision and/or Retention) should be dismissed as Baldoza improperly comingled separate counts into one and failed to allege supporting facts for this count; (4) Count VI (Negligent Design, Modification, Installation, and Utilization of the FlowRider) should be dismissed as Baldoza plead allegations that satisfy the elements for strict product liability, not the cause of action alleged; and (5) any claim for punitive damages should be stricken as they are unavailable in this maritime law, personal injury case.

#### A.  Count II (Failure to Warn)

First, Royal Caribbean seeks to dismiss Count II, a cause of action for failure to warn, because Baldoza "seeks to improperly expand the duty owed by [Royal Caribbean] to its passengers by seeking to hold [Royal Caribbean] liable" in two ways: (1) Royal Caribbean's failure to hire and use a recognized safety consultant to confirm that it was using appropriate signage to alert guests of the risks of injury posed by the FlowRider; (2) Royal Caribbean's failure to require that each guest read and understand the risks explained in the signs and manuals regarding the FlowRider. As the foregoing duties are not imposed by law, in its motion to dismiss, Royal Caribbean "requests that this Court dismiss with prejudice the allegations contained in paragraphs 40(g) and (h)." (D.E. 13, at 6).[1]

---

[1] As discussed in more detail below, Royal Caribbean changes its position on this count in its reply, seeking dismissal of Count II outright.

"In analyzing a maritime tort case, we rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (internal citation omitted). In order to plead a negligence claim, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered the actual harm." *Id.* (internal citation omitted). In a maritime case, the duty is one of "reasonable care." *Id.* (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959) ("It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.")); *see also Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (holding that "the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, [], the menace is one commonly encountered on land and not clearly linked to nautical adventure").

Here, Royal Caribbean argues that Count II improperly seeks to expand the duty of care owed by Royal Caribbean to its passengers as follows:

> g. Failing to hire and use a recognized safety consultant to confirm that [Royal Caribbean] was using appropriate signage to alert guests of the risks of injury posed by the FlowRider; and/or
>
> h. Failing to require that each guest read and understand the risks explained in the signs and manuals regarding the FlowRider[.]

(D.E. 11 ¶ 40 g. and h.).

In support of this proposition, Royal Caribbean cites multiple district court cases. *See Young v. Carnival Corp.*, Case No. 09-21949, 2011 U.S. Dist. LEXIS 10899, at *4, n.4 (S.D. Fla. Feb. 4, 2011) (finding that dangers presented by a shore excursion hike were open and obvious

and noting, in a footnote, the proposition that the plaintiff's failure to read a release prior to signing it does not excuse him from its terms); *Dugas v. 3M Co.*, Case No. 3:14-cv-1096-J-39JBT, 2016 U.S. Dist. LEXIS 41546, at *36 (M.D. Fla. Mar. 29, 2016) (noting that "[t]he distinction between instructions and warnings is critical when considering that a failure to read a warning defeats a failure to warn claim as a matter of law") (internal citations omitted); *Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237, 1242-43 (S.D. Fla. 2010) (dismissing specific allegations "because they allege negligence based on the fact that the medical personnel aboard the ship were not licensed in California or in the jurisdiction of the flag of the ship" and "[m]aritime [l]aw simply requires that if [the defendant] chooses to hire medical personnel, it must hire people that are competent and qualified") (internal citations omitted); *Joseph v. Carnival Corp.*, Case No. 11-20221, 2011 U.S. Dist. LEXIS 80238, at *8-11 (S.D. Fla. July 22, 2011) (finding that "[p]ermitting [p]laintiff to proceed on her claims…would impermissibly expand [the defendant's] duties to its passengers and render it an insurer of its passengers' safety" where the plaintiff alleged that the defendant "had a duty to warn the decedent of the latent dangers of parasailing and a duty to instruct him on how to recognize such dangers" and the plaintiff did not allege that the defendant knew of any incidents related to such dangers); and *Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215, 1220 (S.D. Fla. Mar. 25, 2011) (granting motion to dismiss where there was no allegation that the defendant knew or should have known of the dangerous conditions on the shoreside excursions).

In its response in opposition, Baldoza contends that these cases are distinguishable. The Court agrees. For example, three of the cases are distinguishable because, in those cases, the district court found that the plaintiff had failed to sufficiently allege that the defendant knew, or should have known, of the dangerous condition, and, therefore, there was no duty to warn. *See*

*Young*, 2011 U.S. Dist. LEXIS 10899, at *10-12; *Joseph*, 2011 U.S. Dist. LEXIS 80238, at *8-11; *Koens*, 774 F. Supp. 2d at 1220. As mentioned by Baldoza in the response in opposition, the First Amended Complaint includes allegations that Royal Caribbean had actual knowledge of the dangers associated with the FlowRider based on prior lawsuits. (D.E. 11 ¶ 19). As to *Dugas*, that case was not a maritime personal injury case, and *Rinker* involved a non-existent duty as it related to medical personnel being licensed in California or under the flag of the ship, which is not required under general maritime law. Here, as discussed in the response in opposition (D.E. 14, at 6 n.2), Baldoza's First Amended Complaint includes allegations that Royal Caribbean had actual knowledge of the dangerous condition posed by the FlowRider (D.E. 11 ¶ 19).

Moreover, even if these allegations do in fact expand the duty of care, the Court declines to dismiss Count II in its entirety at this time because, in its motion to dismiss, Royal Caribbean only sought to dismiss with prejudice the allegations contained in paragraphs 40(g) and (h). (D.E. 13, at 6). In its response, Baldoza cited to *Bonck v. Carnival Corp.*, where Magistrate Judge McAliley, in a report and recommendation to this Court, recommended that Carnival's motion to dismiss be denied "[g]iven that [p]laintiff ha[d] adequately alleged the existence of one duty—the duty to warn" and it was "unnecessary to address Carnival's other argument, that the negligence claim imposes other heightened duties of care that are not recognized under admiralty law." No. 18-23991-CIV, 2019 WL 4866292, at *4 (S.D. Fla. June 25, 2019) (citing cases). In doing so, Magistrate Judge McAliley reasoned that "Carnival's argument is more appropriate at later stages of this litigation." *See id.* This Court subsequently adopted that recommendation. 2019 WL 4291346 (S.D. Fla. Sept. 11, 2019).

Accordingly, the Court denies Royal Caribbean's belated request, raised for the first time in its reply (D.E. 15, at 2), to dismiss Count II in its entirety. To the extent that Count II imposes

a heightened duty of care, Royal Caribbean is free to renew these arguments at later stages of the litigation, e.g., via a motion for summary judgment. *See Bonck*, 2019 WL 486692, at *4.

### B. Count III (Failure to Maintain)

Second, Royal Caribbean seeks to dismiss Count III (Failure to Maintain), claiming that Baldoza has failed to plead sufficient facts to show how Royal Caribbean's failure to maintain the FlowRider caused the incident. In support, Royal Caribbean cites *Rinker*, where the district court granted Carnival's motion to dismiss where the plaintiff failed to plead causation in another maritime personal injury case. 753 F. Supp. 2d at 1243. The motion to dismiss includes no discussion of the case, outside of citing it for the proposition that a motion to dismiss should be granted where the plaintiff fails to plead causation and what a cruise line should have done. (D.E. 13, at 7).

As courts in this district have recognized before, "'negligent maintenance' is a viable theory of breach and proximate causation in a maritime negligence suit." *See Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1358 (S.D. Fla. 2015) (collecting cases); *see also Petersen v. NCL (Bahamas) Ltd.*, 748 Fed. Appx. 246, 251 (11th Cir. 2018) (reversing grant of summary judgment on negligent maintenance claim and remanding for further consideration given "the evidence suggesting that [the defendant] did not follow the manufacturer's instructions for cleaning the deck").

Here, as alleged in the First Amended Complaint, Baldoza claims that "[t]he FlowRider onboard Royal Caribbean's *Symphony of the Seas* is different from a standard FlowRider, because employees and/or agents of [Royal Caribbean] modified it by shortening its overall length in order to fit the attraction on the deck of the [] cruise ship." (D.E. 11, at ¶ 21). Moreover, in addition to being "shorter than the standard manufactured FlowRider attraction," Baldoza alleges that the FlowRider onboard the *Symphony of the Seas* "also uses an outdated and inherently dangerous

backstop and padding system" instead of the "Pillow Padding" or "up-to-date technology." *Id.* ¶ 23. The First Amended Complaint also includes allegations regarding the dangers associated with the alleged negligent maintenance of the FlowRider: (1) "[d]ue to th[e] shorter length and design a person propelled up the surface of the 'wave' can be thrown for a more severe fall and/or can be thrown into the back wall at a very high velocity, since unlike a standard [FlowRider], the water jets and the back wall of the attraction is much closer to the 'wave' front" (*id.* ¶ 22); and (2) this FlowRider does not contain "Pillow Padding," which helps "support falls and decrease injuries" (*id.* ¶ 23). Baldoza has alleged how this alleged negligent maintenance of the FlowRider caused Baldoza's injuries. *Id.* ¶ 26.

Thus, the Court denies Royal Caribbean's motion to dismiss Count III (Failure to Maintain) on the basis that it does not adequately plead facts showing how Royal Caribbean's failure to maintain the FlowRider caused Baldoza's injuries. As noted, the First Amended Complaint includes factual allegations that Royal Caribbean's shortening of the FlowRider and failure to use "Pillow Padding" technology, which apparently is an outdated design that the manufacturer has since updated, as well as allegations showing how Royal Caribbean's alleged negligent maintenance of the FlowRider caused Baldoza's injuries.

Additionally, once more, for the first time, Royal Caribbean raises a new argument in its reply: Count III is duplicative of Count VI (Negligent Design, Modification, Installation and Utilization claim). As such, the Court denies Royal Caribbean's belated request, as it was raised for the first time in its reply and Baldoza was not afforded the opportunity to address it in any response. If appropriate, the arguments pertaining to the dismissal of Count III may be renewed at the summary judgment stage of the proceedings.

### C.  Count V (Negligent Hiring, Training, Supervision and/or Retention)

Third, Royal Caribbean seeks dismissal of Count V (Negligent Hiring, Training, Supervision and/or Retention) on two grounds: (1) Count V is an improper shotgun pleading which comingles separate causes of action; and (2) Count V fails to state a claim upon which relief can be granted.

### 1.  Count V is a Shotgun Pleading.

As to Count V, which alleges a cause of action for "Negligent Hiring, Training, Supervision, and/or Retention," D.E. 11, at 16, Royal Caribbean contends that it is an impermissible shotgun pleading that comingles separate causes of action into one count. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015) ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."). Specifically, Royal Caribbean maintains that Baldoza's claim for negligent training is distinct from his claim for negligent hiring and, thus, should be pleaded in separate counts.

In his response in opposition, Baldoza concedes that some courts in this district have required plaintiffs to assert negligent hiring, training, supervision and retention claims in separate counts. *See McFee v. Carnival Corp.*, No. 19-22917, 2020 U.S. Dist. LEXIS 21062, at *12-14 (S.D. Fla. Feb. 3, 2020) (granting motion to dismiss where the plaintiff alleged negligent hiring and retention causes of action in one single count and reasoning that each cause of action, under Florida law, required different factual findings by a jury and permitting the plaintiff to replead the cause of action separately would eliminate a verdict form issue"). Nevertheless, Baldoza points to other courts in this district that have found that separate counts were not required where the allegations put the defendant on notice of the claims. *See Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1323 (S.D. Fla. 2020) (denying motion to dismiss on shotgun pleading ground where

defendant "demonstrated its understanding of the elements of those negligent training and negligent monitoring claims asserted against it [in a single count]").

In its reply, Royal Caribbean posits that *Doe*, 470 F. Supp. 3d 1317, is distinguishable, as there the defendant understood the elements of the causes of action asserted against it, while here Royal Caribbean is unsure of which allegations go to each theory of liability. Namely, Royal Caribbean states that "Count V is a morass of 38 paragraphs (not including subparts)." (D.E. 15, at 4).

After reading the relevant portions of *Doe* and *McFee*, the Court finds the reasoning employed in *McFee* applicable in this case.[2] In that case, the district court noted "[t]he principle difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness." *McFee*, 2020 U.S. Dist. LEXIS 21062, at *13 (citing *Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014)). The district court noted that "[n]egligent hiring occurs when, 'prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background." *Id.* (citing *Mumford*, 7 F. Supp. 3d at 1249) (citing *Williams v. Feather Sound, Inc.*, 386 So. 2d 1238 (Fla. 2d DCA 1980)). On the other

---

[2] To the extent that Baldoza relies on two other district court cases, *Stires* and *Gayou*, it appears that both of those cases are distinguishable as the defendants there did not raise the argument that the negligent hiring and retention count at issue was a shotgun pleading. *See Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1318-19 (M.D. Fla. 2002) (finding that the plaintiff's allegations for "negligent investigation, hiring, retention, supervision, and management" count satisfied Federal Rule of Civil Procedure 8(a)'s short and plain statement requirement where the defendant claimed that the plaintiff "failed to aver facts sufficient to show a breach of duty to exercise reasonable care in hiring"); *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359, 2012 WL 2049431, at *5 n.2 (S.D. Fla. June 5, 2012) (noting that "it [was] not entirely clear that [the plaintiff] [was] attempting such a claim [negligent hiring and retention claim]" as the count was labeled "negligence" and ordering the plaintiff that any negligent hiring and retention claim should be replead in an independent count (independent from the negligence count)).

hand, "[l]iability for negligent retention, 'occurs after employments begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." *McFee*, 2020 U.S. Dist. LEXIS 21062, at *13 (citing *Malicki v. Doe*, 814 So. 2d 347, 362, n. 15 (Fla. 2002)).

Ultimately, the district court in *McFee* found that the count in that case was an impermissible shotgun pleading because "it assert[ed] two separate causes of action in a single count" as "[l]iability for negligent hiring and negligent retention require different findings, specifically, when the employer knew or should have known of the employee's unfitness." *McFee*, 2020 U.S. Dist. LEXIS 21062, at *13-14. As such, "a jury could find [the] [d]efendant liable for negligent hiring *or* negligent retention *or* both, so pleading them in a single count would present a verdict form issue that is easily resolved by requiring [the] plaintiff to replead them in separate counts." *Id.* at *14 (emphasis in original).

Applying *Weiland* to this case, Count V is "[t]he third type of shotgun pleading," as it "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1322-23. Like in *McFee*, where the district court found that negligent hiring and retention claim required different factual findings by a jury and repleading such claims into separate counts was appropriate, the same result should follow here. *McFee*, 2020 U.S. Dist. LEXIS 21062, at *13-14. Accordingly, Royal Caribbean's motion to dismiss Count V is granted and Count V is dismissed without prejudice, as it is an impermissible shotgun pleading. Should Baldoza choose to file an amended complaint, if appropriate, he shall separate his causes of action into different counts.

### 2. Count V Fails to State a Claim Upon Which Relief Can Be Granted.

In addition to arguing that Count V is an impermissible shotgun pleading, Royal Caribbean also maintains that this count "fails to allege any facts relating to the hiring or retention of

employees." More specifically, Royal Caribbean claims that Baldoza's claims for negligent training, negligent supervision, and negligent selection or hiring are inadequately plead.

### i.   *Negligent Training*

As it relates to negligent training, Royal Caribbean cites *Doe v. NCL (Bahamas) Ltd.*, No. 1:18-cv-200603, 2018 U.S. Dist. LEXIS 136480, at *9-10 (S.D. Fla. Aug. 10, 2018) for the proposition that a threadbare recitation that the defendant failed to train its employees is insufficient to state a claim for negligent training. That case involved a complaint that "merely state[d] that [the defendant] fail[ed] to train these crewmembers to stay away from female and minor children passengers, which allow[ed] and/or promote[d] improper conduct by its crewmembers including sexual assault, sexual battery, and sexual abuse, among other broad allegations that [the defendant] failed to train its crewmembers." *Doe*, 2018 U.S. Dist. LEXIS 136480, at *9-10 (internal citations and quotations omitted).

According to Royal Caribbean, like in *Doe*, the First Amended Complaint only includes conclusory allegations concerning negligent training:

> b. Failing to properly and adequately instruct, train and supervise employees/crewmembers and/or agents acting as instructors in how to conduct the subject activity safely; and/or
> …
> f. Failing to adequately train its employees/agents to properly assist and help injured passengers participating in the subject activity; and/or
> …
> g. Failing to adequately train its employees/agents whose duty it was to warn passengers participating in the subject activity of the inherent and unreasonable dangers and risks associated with the subject activity.

D.E. 11 ¶¶ 57 (b), (f), and (g).

In his response in opposition, Baldoza notes how the First Amended Complaint includes allegations that Royal Caribbean's employees were "unfit" or "incompetent" based on their negligent instruction, including, not limited to:

a. Telling the Plaintiff that the FlowRider was safe;

b. Instructing the Plaintiff to participate on the FlowRider while standing up, without proper training or instruction;

c. Kicking the board that the Plaintiff was using to position the Plaintiff in the center of the stream near the base, where the water pressure is highest;

d. Instructing the Plaintiff to push down on the front of the board, which would lower the board under the artificial wave while raising the Plaintiff's center of gravity, making it more likely that he would fall and sustain catastrophic injury, as he did.

D.E. 11 ¶¶ 56(a)-(d). Additionally, Baldoza also points to the following allegations in the First Amended Complaint, which purportedly demonstrate Royal Caribbean's alleged negligent training of its FlowRider employees (those employees who were stationed at the subject FlowRider):

24. [] Baldoza's instructors, employees and/or agents of [Royal Caribbean], instructed and encouraged [] Baldoza, [], to ride the FlowRider in a non-traditional and dangerous manner, by beginning the attraction towards its front end. The front of the attraction is the lowest point of the FlowRider, and the exact location of the jets which propel water up the ride's sloped surface. For this reason, the thin sheet of water is traveling at its fastest at this location in the ride.

25. [] Baldoza's instructors, employees and/or agents of [Royal Caribbean], provided no guidance to [] Baldoza, [], on how to safely ride the FlowRider in this non-traditional and dangerous manner. Furthermore, [] Baldoza was not provided an ample opportunity to practice on the FlowRider attraction before being ushered to the more advanced technique of riding the smaller board in a stand-up fashion.

D.E. 11 ¶¶ 24-25. As noted in Royal Caribbean's reply, these allegations do not reference Royal Caribbean's training program.

As the district court noted in *Doe*, "[n]egligent training occurs when an employer was negligent in the implementation or operation of the training program and this negligence caused a plaintiff's injury." *Doe*, 2018 U.S. Dist. LEXIS 136480, at *9 (internal citation omitted); *see also Doe*, 470 F. Supp. 3d at 1324. In finding that the plaintiffs failed to state a claim for negligent training, the district court in *Doe*, 2018 U.S. Dist. LEXIS 136480, noted that the plaintiffs "fail[ed]

to plead that [the defendant's] negligent implementation or operation of its training program caused [the employee] to sexually assault [the victim]." 2018 U.S. Dist. LEXIS 136480, at *9.

After reviewing the allegations related to Royal Caribbean's alleged negligent training, it does not appear that the First Amended Complaint contains any allegations relating to Royal Caribbean's negligence in the "implementation or operation of [a] training program and [how] this negligence caused [Baldoza's] injury." *Doe*, 2018 U.S. Dist. LEXIS 136480, at *9. In his response in opposition, Baldoza does not address or distinguish *Doe*, 2018 U.S. Dist. LEXIS 136480, or provide any legal authority for the proposition that the count, as alleged for negligent training, is sufficient. He also does not cite to any allegations in the First Amended Complaint that pertain to Royal Caribbean's negligent implementation or operation of a training program. Accordingly, allegations pertaining to Royal Caribbean's alleged negligent training are dismissed without prejudice. Should Baldoza choose to file an amended complaint, he shall include factual allegations showing how Royal Caribbean was "negligent in the implementation or operation of the training program and [how] this negligence caused [Baldoza's] injury." *Doe*, 2018 U.S. Dist. LEXIS 136480, at *9.

### ii. *Negligent Supervision*

"Negligent supervision occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Doe*, 470 F. Supp. 3d at 1324 (internal citations and quotations omitted). "To state a claim for negligent supervision, a plaintiff must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." *Doe*, 2018 U.S. Dist. LEXIS 136480, at *8-9 (internal quotation marks and citations omitted).

In its motion to dismiss, Royal Caribbean contends that the First Amended Complaint "alleges no facts concerning the [Royal Caribbean] employees in question, much less that [Royal Caribbean] knew or had reason to know of any unfitness before the incident occurred." Namely, Royal Caribbean claims that this cause of action suffers from the same infirmities that led the district court to dismiss the same cause of action in *Kilbey v. Carnival Corp.*, No. 16-23186-Civ, 2017 U.S. Dist. LEXIS 32286, at *6-7 (S.D. Fla. Mar. 3, 2017) (dismissing negligence claim that "hint[ed] at a possible claim for negligent training or supervision" because the complaint did not "clearly explain the relationship between [the defendant] and [independent contractor]" and reasoning that the plaintiff did not allege facts concerning the incompetence of the independent contractor or its employees regarding the subject activity [providing massages] or facts concerning "actual or constructive notice of that incompetence").

In his response, Baldoza claims that *Kirbey* is distinguishable because he "has given specific examples of the manner in which his instructors were unfit and has also alleged that [Royal Caribbean] knew of many serious passenger injuries that occurred on the FlowRider." The Court partially agrees with this statement: *Kirbey* is distinguishable in part, because, as previously noted, Baldoza has alleged how Royal Caribbean's FlowRider employees (or employees stationed at the FlowRider) were unfit or incompetent. D.E. 11 ¶¶ 56(a)-(d). Notably, in its reply, Royal Caribbean does not dispute this.

However, the issue of whether Royal Caribbean had notice of its employees' fitness remains contested: in its reply, Royal Caribbean argues that prior lawsuits are insufficient because Baldoza has not alleged that these prior lawsuits involved the same employees. (D.E. 15, at 5-6). In his response, Baldoza does not address whether he has alleged that Royal Caribbean was on notice of its employees' unfitness, rather, he points to the allegation that Royal Caribbean "knew

of many serious passenger injuries that occurred on the FlowRider." This argument misses the mark as it does not address how prior passengers' injuries would put Royal Caribbean on notice of its employees' incompetence, absent an allegation that the same employee was involved in a prior case.

Thus, based on the arguments made, the Court finds that Baldoza has failed to allege facts concerning Royal Caribbean's "actual or constructive notice of [its employees'] incompetence as it relates to the employees responsible for instructing, supervising, and/or assisting passengers that participated in the FlowRider activity. *See Kilbey*, 2017 U.S. Dist. LEXIS 32286, at *7. Accordingly, allegations pertaining to Royal Caribbean's alleged negligent supervision are dismissed without prejudice. Should Baldoza choose to file an amended complaint, if appropriate, he shall include factual allegations showing how Royal Caribbean was on actual or constructive notice of its employees' incompetence. *See id; see also Inman v. Am. Paramount Fin.*, 517 Fed. Appx. 744, 748 (11th Cir. 2013) (citing *Dept' of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) (noting that, under Florida law, to state a claim for negligent supervision "[t]he plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate and take corrective action")).

### iii.      *Negligent Selection or Hiring*

"To state a claim for negligent selection or hiring under Florida law, Plaintiff must allege (1) that an employee . . . was incompetent or unfit to perform the work provided; (2) that Defendant knew [or] reasonably should have known of the particular incompetence or unfitness; and (3) that the competence or unfitness proximately caused the injuries." *McFee*, 2020 U.S. Dist. LEXIS 21062, at *12-13 (citing *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1334 (S.D. Fla. 2019)).

"To meet the second element, a plaintiff must allege sufficient facts showing that the employer was on notice of the harmful propensities of the person hired or retained." *See id.*

Royal Caribbean maintains, in relevant part, that the First Amended Complaint only includes "vague and conclusory allegations that [Royal Caribbean] hired employees 'without performing a thorough background and qualification check to ensure they possessed the skills necessary to properly and safely instruct passengers participating in the subject activity.'"

In his response in opposition, Baldoza merely states as follows: "Once again, [Royal Caribbean] completely disregards the factual allegations contained in the Amended Complaint which are set forth in detail above." (D.E. 14, at 14). Baldoza does not address the elements for pleading a negligent selection or hiring claim under Florida law or how he has sufficiently alleged facts showing that Royal Caribbean was "on notice of the harmful propensities of the person hired or trained." *See McFee*, 2020 U.S. Dist. LEXIS 21062, at *12-13 (citing *Kennedy*, 385 F. Supp. 3d at 1334).

Similarly, Baldoza's allegations as it relates to the negligent hiring cause of action are also insufficient, as there are no facts showing that Royal Caribbean was on notice of the employee's "particular incompetence or unfitness." *See id.* In relevant part, Count V simply alleges that Royal Caribbean breached its duty to Baldoza as follows:

> 57.a. Hiring and retaining employees/agents for supervising, instructing, and assisting passengers participating in the subject activity without performing a thorough background and qualifications check to ensure they possessed the skills necessary to properly and safely instruct passengers participating in the subject activity.

(D.E. 11 ¶ 57(a)).

For these reasons, the Court finds that Baldoza has failed to allege facts concerning whether Royal Caribbean "knew [or] reasonably should have known of the [employee's] particular

incompetence or unfitness." *McFee*, 2020 U.S. Dist. LEXIS 21062, at *12-13. Accordingly, allegations pertaining to Royal Caribbean's alleged negligent selection or hiring are dismissed without prejudice. Should Baldoza choose to file an amended complaint, if appropriate, he shall include factual allegations showing that Royal Caribbean was on notice of the harmful propensities of the person hired or retained." *McFee*, 2020 U.S. Dist. LEXIS 21062, at *13.

D.  **Count VI (Negligent Design, Modification, Installation, and Utilization of the FlowRider)**

For this count, Royal Caribbean argues that it should be dismissed on the following two grounds: (1) Count VI is really a strict liability cause of action and Baldoza has failed to allege any facts showing that Royal Caribbean sold the modified FlowRider; and (2) Count VI is an impermissible shotgun pleading as it comingles claims for negligent design and utilization.

1.  **Failure to State a Claim Upon Which Relief Can Be Granted**

Royal Caribbean first contends that Count VI is really a strict liability cause of action and is mislabeled as a negligent design, modification, installation, and utilization claim. In support of this contention, Royal Caribbean points to allegations included under Count VI, which all implicate Royal Caribbean's alleged negligence in designing and/or manufacturing the FlowRider. (D.E. 11 ¶¶ 61-68). Royal Caribbean also asserts that other courts in this district have already dismissed strict liability claims against it related to the FlowRider as Royal Caribbean did not sell the modified FlowRider. *See Lalonde v. Royal Caribbean Cruises, Ltd.*, No. 1:18-CV-20809, 2019 U.S. Dist. LEXIS 3610, at *6-10 (S.D. Fla. Jan. 9, 2019) (granting motion to dismiss strict liability cause of action where the plaintiff did not "sufficiently allege the essential element that [Royal Caribbean] sold the FlowRider after modifying it"); *Brennan v. Royal Caribbean Cruises, Ltd.*, No. 19-21478, 2020 U.S. Dist. LEXIS 17037, at *5-7 (S.D. Fla. Jan. 31, 2020) (granting motion to dismiss "claim for strict products liability for negligent design, installation, and utilization"

where the plaintiff failed to allege the defendant was a "seller" of the FlowRider and agreeing with the reasoning employed in *Lalonde*).

Baldoza concedes that other courts in this district have found that Royal Caribbean "could not be held strictly liable for the design of the FlowRider in the absence of an allegation that [Royal Caribbean] is in the business of selling the modified FlowRider." Yet, according to Baldoza, "none of these cases addressed the issue of whether [a] plaintiff can assert a claim of ordinary negligence arising from the modification, installation, and use of the modified FlowRider, which is what [he] attempted to do in Count VI." In support of this proposition, Baldoza cites to *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 n.11 (11th Cir. 1992), where the Eleventh Circuit noted that, although the plaintiff's strict liability claim failed because it lacked the essential element of a sale, a claim "based on general negligence principles," i.e., the defendant failed to use reasonable care to ensure the safe operation of the product, would not require a sale.

Neither party recites the elements required for a cause of action based on a defendant's negligent design, modification, installation, or utilization of a product or whether such claims exist under general maritime law or Florida law. Hence, based on the arguments made here, the Court denies Royal Caribbean's motion to dismiss Count VI on this basis, with leave to re-raise these arguments, if appropriate, at the summary judgment stage. As previously stated, at summary judgment, Royal Caribbean may also re-raise its argument that Count VI is duplicitous, given other counts in the First Amended Complaint.

### 2. Shotgun Pleading

As to Count VI, Royal Caribbean also contends that this count is a shotgun pleading. On this issue, Royal Caribbean merely states as follows in its motion to dismiss:

> Furthermore, this claim is an impermissible shotgun pleading which comingles negligence claims such as negligent design and negligent utilization. As such,

> Plaintiff has failed to state a claim for Count VI and must be dismissed with prejudice.

(D.E. 13, at 17). Royal Caribbean provides no legal authority in support of this proposition. Also, Baldoza does not appear to respond to this argument in his response to the motion to dismiss. Accordingly, the Court denies Royal Caribbean's motion to dismiss Count VI as a shotgun pleading, with leave to re-raise these arguments, if appropriate, at the summary judgment stage of the proceedings.

### E.  Baldoza's Request for Punitive Damages

Lastly, Royal Caribbean moves to strike Baldoza's request for punitive damages in light of the Eleventh Circuit's unpublished decision in *Eslinger v. Celebrity Cruises, Inc.*, 772 Fed. Appx. 872, 872 (11th Cir. 2019) ("Our court has held that plaintiffs may not recover punitive damages, including loss of consortium damages, for personal injury claims under federal maritime law.") (citing *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997)).

As evidenced by the parties' briefing on this issue, courts in this district are split as to whether punitive damages are available to nonseafarers as a matter of law following the Eleventh Circuit's unpublished decision in *Eslinger*. Royal Caribbean requests that this Court adopt Judge Altonaga's position in *Doe v. NCL (Bahamas) Ltd.*, No. 19-cv-21486, D.E. 52 (S.D. Fla. Aug. 29, 2019) (a transcript including Judge Altonaga's ruling is attached as Exhibit A to the motion to dismiss here), where Judge Altonaga followed *Eslinger* and found that plaintiffs may not recover punitive damages for personal injury claims under federal maritime law.

On the other hand, Baldoza cites to Judge Ungaro's decision in *Doe v. Carnival Corp.*, where Judge Ungaro reiterated that "punitive damages may still be available, but only upon a showing of the defendant's intentional misconduct." 470 F. Supp. 3d 1317, 1325 (S.D. Fla. 2020)

(citing *Simmons v. Royal Caribbean Cruises, Ltd.*, 423 F. Supp. 3d 1350, 1352-54 (S.D. Fla. 2019)). In her opinion in *Doe v. Carnival Corp.*, Judge Ungaro also cites to other instances where courts in this district found that punitive damages may still be available under certain instances under maritime law. *Doe*, 470 F. Supp. 3d at 1325-26 (collecting cases).

After careful consideration, at this time the Court denies Royal Caribbean's motion to strike the request for punitive damages in Baldoza's First Amended Complaint without prejudice, with leave to re-raise these issues at the summary judgment stage, that is, whether punitive damages are available under federal maritime law in personal injury cases, and whether Baldoza has satisfied the high standard required for such damages if available in these proceedings. *See Incardone v. Royal Caribbean Cruises, Ltd.*, No. 16-20924, 2020 WL 2950684, at *6-7 (S.D. Fla. Jan. 18, 2020).

## IV.   <u>CONCLUSION</u>

Accordingly, for the foregoing reasons, Royal Caribbean's Motion to Dismiss the Amended Complaint for Failure to State a Cause of Action and to Strike Demand for Punitive Damages **(D.E. 13)** is **granted in part and denied in part**.

The motion to dismiss Counts II, III, VI, and motion to strike the request for punitive damages is **denied,** with leave to re-raise these arguments, if appropriate, at the summary judgment stage. The motion to dismiss Count V is **granted** and Count V is **dismissed without prejudice,** with leave to file an amended complaint, if appropriate, that cures the deficiencies outlined herein.

Baldoza shall file any amended complaint, if appropriate, by **February 1, 2021.** Royal Caribbean shall file its answer to the First Amended Complaint or any response to any newly amended complaint by **February 8, 2021.**

DONE AND ORDERED in Chambers at Miami, Florida, this 25th day of January 2021.

_____
         FEDERICO A. MORENO
         UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Counsel of Record